IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

COOK, STRATTON & COMPANY, INC.,

    Plaintiff,

    v.                                    CIVIL NO. 05-2173 (RLA)

UNIVERSAL INSURANCE GROUP,
INC., et al.,

    Defendants.

### ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION

Pending before the court for disposition is defendants' motion seeking reconsideration of our Order vacating Judgment dismissing the instant complaint. Specifically, movants contend that there is no complete diversity between the parties in that certain local corporations not named in the suit are indispensable parties to this litigation and because plaintiff should be considered a citizen of Puerto Rico under the "alter ego" doctrine.

The court having reviewed the documents in file as well as the arguments presented hereby rules as follows.

### PROCEDURAL BACKGROUND

Plaintiff, COOK, STRATTON & COMPANY, INC. ("COOK"), instituted these proceedings against UNIVERSAL INSURANCE GROUP, INC., UNIVERSAL INSURANCE COMPANY, INC. and UNIVERSAL HEALTH & ACCIDENT INSURANCE, INC. (collectively identified as "UNIVERSAL") for breach of contract and damages.

The court granted defendants' motion to dismiss the complaint for lack of subject matter jurisdiction as unopposed.[1] Cause having been shown, plaintiff's petition for reconsideration was granted and the Judgment of dismissal was subsequently vacated.[2] Defendants now renew their petition for dismissal via their motion for reconsideration.

Because the arguments presented by defendants have been consistently the same in all their motions, we shall also address the arguments presented in plaintiff's Opposition to Motion to Dismiss (docket No. 9) in ruling on the issues presented for disposition.

## THE FACTS

The following facts are deemed true in accordance with the allegations made in the complaint as well as the documents submitted by the parties.

COOK is a corporation duly organized under the laws of the state of Illinois with its principal place of business in that state.[3]

The conglomerate of corporations collectively named as UNIVERSAL are all legal entities duly organized and incorporated under the laws

---

[1]   *See*, Judgment (docket No. 8).

[2]   See, Order Granting Motion for Reconsideration and Vacating Judgement (docket No. 11).

[3]   Complaint ¶ 1.

CIVIL NO. 05-2173 (RLA)                                    **Page 3**

of the Commonwealth of Puerto Rico with their principal place of business also in Puerto Rico.[4]

Since 1984 COOK has been doing business in Puerto Rico through its affiliate, MED PLUS, INC. ("MED PLUS"), which has its principal place of business in Bayamon, Puerto Rico.[5]

In November 2000 UNIVERSAL contacted BENJAMIN VAN BLAKE, plaintiff's representative, to discuss the possibility of UNIVERSAL entering the health insurance market in Puerto Rico with plaintiff's assistance.[6]

"[A]t the time [COOK] had been successfully operating in Puerto Rico since 1984 as an administrator of health insurance programs for various clients through its affiliate in Puerto Rico, commonly known as Med Plus, and had the knowledge and expertise to conduct such business in Puerto Rico."[7]

UNIVERSAL intended for COOK to serve as its insurance program's third-party administrator through its MED PLUS affiliate.[8]

During a period of 24 months subsequent to November 2000, defendants' representatives met several times with plaintiff's representatives "to implement a plan of action for [defendants] to

---

[4]   Complaint ¶¶ 2-4.

[5]   Complaint ¶ 8.

[6]   Complaint ¶ 7.

[7]   Complaint ¶ 8.

[8]   Complaint ¶ 10.

enter the health insurance market in Puerto Rico with [COOK] serving as [defendants'] insurance program's third-party administrator.[9]

During the negotiations period, COOK provided "advice as to products, systems customer service, reporting formats, service providers, accounting and new business projections, all of which were proprietary information and assets of [COOK's] Med Plus affiliate."[10]

"Among other things, and in order to position itself to be able to fully serve the needs of [defendants'] insurance program, [COOK] and its Med Plus affiliate started to transform its [sic] operations, first, by refraining from securing new business for its main client, Pan American Life Insurance Company; second, by reducing its sales force which would not be needed after it started to administer [defendants'] health insurance program... and third, by making a significant monetary investment in business infrastructure, equipment, consulting needed for the greater demand for its services that would be required under its agreement with [defendants]."[11]

"After very extensive and productive negotiations, and the parties having agreed to all terms, on February 25, 2003 [UNIVERSAL] signed a Service Agreement with [COOK] for the administration of its health insurance program."[12]

---

[9]  Complaint ¶ 9.

[10]  Complaint ¶ 11.

[11]  Complaint ¶ 12.

[12]  Complaint ¶ 13.

**CIVIL NO. 05-2173 (RLA)**                                           **Page 5**

On that same date, COOK and UNIVERSAL entered into "a Service Agreement; End User Agreement; License Agreement; and HIPAA business Associate Addendum (the agreements)."[13]

Pursuant to the agreements entered into between COOK and UNIVERSAL both DATA SERVICES BUREAU, INC. ("DATA") and MED PLUS would provide services to UNIVERSAL and COOK.[14]

Both MED PLUS and DATA are corporations organized under the laws of the Commonwealth of Puerto Rico and/or have their principal place of business in Bayamon, Puerto Rico.[15]

On August 1, 2002 DATA entered into an Agreement for the Purchase of Services with THE TRIZETTO GROUP, INC. ("TRIZETTO"), in order for the latter to complete a Turnkey arrangement for customer Connectivity Center Conversion Services at a cost of $7,500.00.[16]

---

[13] See, Warranty Agreement between UNIVERSAL and DATA SERVICE BUREAU, INC. and Warranty Agreement between UNIVERSAL and MED PLUS, INC. Attachments 1 and 2 to defendants' Motion for Reconsideration (docket No. 12).

[14] See, Warranty Agreement between UNIVERSAL and DATA SERVICE BUREAU, INC. and Warranty Agreement between UNIVERSAL and MED PLUS, INC. Attachments 1 and 2 to defendants' Motion for Reconsideration (docket No. 12).

[15] See, Certificates from the Puerto Rico State Department Attachments 3 and 4 to defendants' Motion for Reconsideration (docket No. 12).

[16] See, Agreement for the Purchase of Equipment Attachment 5 to defendants' Motion for Reconsideration (docket No. 12).

**CIVIL NO. 05-2173 (RLA)**                                    **Page 6**

---

On August 1, 2002 DATA entered into an Agreement for the Purchase of Services with TRIZETTO for a Training on Claim Batch Implementation for two trainees at a cost of $3,000.00.[17]

On August 1, 2002 DATA entered into an Agreement for the Purchase of Equipment with TRIZETTO for connectivity equipment for $1,760.00.[18]

On August 1, 2002 DATA entered into an Agreement for the Purchase of Equipment with TRIZETTO for Relativity Software at a cost of $3,000.00.[19]

DATA submitted to UNIVERSAL for reimbursement the invoices allegedly paid to TRIZETTO for products and services obtained in preparation for the implementation of the Services Agreement.[20]

MED PLUS submitted to UNIVERSAL invoices allegedly paid to INTECWORKS for products and services obtained in order to prepare for the implementation of the Services Agreement which amounted to more than $11,000.00.[21]

---

[17] *See*, Agreement for the Purchase of Equipment Attachment 6 to defendants' Motion for Reconsideration (docket No. 12).

[18] See, Agreement for the Purchase of Equipment Attachment 7 to defendants' Motion for Reconsideration (docket No. 12).

[19] See, Agreement for the Purchase of Equipment Attachment 7 to defendants' Motion for Reconsideration (docket No. 12).

[20] *See*, Exhibits 8a through 8f to defendants' Motion for Reconsideration (docket No. 12).

[21] *See*, Exhibits 9a through 9f to defendants' Motion for Reconsideration (docket No. 12).

CIVIL NO. 05-2173 (RLA)                                              **Page 7**

On or about February 13, 2003 MED PLUS paid Centennial de Puerto Rico in excess of $6,000.00 for the installation and configuration of equipment allegedly acquired to prepare for the implementation of the Services Agreement.[22]

MED PLUS also submitted to UNIVERSAL invoices from Alpha Designer Forms and from Impression Associates, Inc. for plan identification cards and checks purchased associated with the preparation for the implementation of the Services Agreement.[23]

On November 10, 2003, COOK submitted to UNIVERSAL for reimbursement an invoice for $331,495.88 which essentially listed the amounts billed to its affiliates MED PLUS and DATA.[24]

At a meeting held on November 7, 2003 UNIVERSAL advised COOK that it "had cancelled [its] plans to enter the health insurance business" and that the February 25, 2003 Service Agreement was cancelled.[25]

In a December 11, 2003 letter addressed to COOK, MED PLUS made reference to the various meetings held during December 2003 with representatives of UNIVERSAL whereby MED PLUS had advised that its

---

[22]   *See*, Exhibits 10a and 10b to defendants' Motion for Reconsideration (docket No. 12).

[23]   *See*, Exhibits 11a through 10c to defendants' Motion for Reconsideration (docket No. 12).

[24]   *See*, Exhibit 12 to defendants' Motion for Reconsideration (docket No. 12).

[25]   Complaint ¶ 20.

CIVIL NO. 05-2173 (RLA)                                    **Page 8**

---

funds were depleted. Additionally, MED PLUS informed UNIVERSAL of its dire economic situation, demanded reimbursement in full of the expenses incurred and alerted them to the detrimental consequences if payment was not made.[26]

### SUBJECT MATTER JURISDICTION

The court's authority to entertain a particular controversy is commonly referred to as subject matter jurisdiction. "In the absence of jurisdiction, a court is powerless to act.") Am. Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP, 362 F.3d 136, 138 (1st Cir. 2004). "The district courts of the United States are 'courts of limited jurisdiction. They possess only that power authorized by Constitution and Statute.'" Olympic Mills Corp. v. DDC Operating, Inc., 477 F.3d 1, 6 (1st Cir. 2007) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)).

Hence, federal courts have the duty to examine their own authority to preside over the cases assigned. "It is black-letter law that a federal court has an obligation to inquire sua sponte into its own subject matter jurisdiction." McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004). See also, Bonas v. Town of North Smithfield, 265 F.3d 69, 73 (1st Cir. 2001) ("Federal courts, being courts of limited jurisdiction, have an affirmative obligation to examine

---

[26] Exhibit 13 to defendants' Motion for Reconsideration (docket No. 12).

jurisdictional concerns on their own initiative.") Further, subject matter jurisdiction is not waivable and thus, may be raised at any time, including at the appellate stage. Kontrick v. Ryan, ___ U.S. ___ 124 S.Ct. 906, 915, 157 L.Ed.2d 867 (2004); Olympic Mills, 477 F.3d at 6; Carnero v. Boston Scientific Corp., 433 F.3d 1, 18 (1st Cir. 2006).

Ordinarily subject matter jurisdiction should be examined as a threshold matter and if found lacking the case should be dismissed without entertaining the merits of plaintiff's complaint. Bolduc v. United States, 402 F.3d 50, 55 (1st Cir. 2005); Berner v. Delahanty, 129 F.3d 20, 23 (1st Cir. 1997).

The proper vehicle for challenging the court's subject matter jurisdiction is Rule 12(b)(1) whereas challenges to the sufficiency of the complaint are examined under the strictures of Rule 12(b)(6). In disposing of motions to dismiss for lack of subject matter jurisdiction the court is not constrained to the allegations in the pleadings as with Rule 12(b)(6) petitions. Rather, the court may review extra-pleading material without transforming the petition into a summary judgment vehicle. Coyne v. Cronin, 386 F.3d 280, 286 (1st Cir. 2004); Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002).

In ruling on a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the district court must construe the complaint liberally,

CIVIL NO. 05-2173 (RLA)                                          **Page 10**

treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff. In addition, the court may consider whatever evidence has been submitted, such as the depositions and exhibits submitted in the case.

Aversa, 99 F.3d at 1210-11 (citations omitted). *See also*, Dynamic Image Tech., Inc., 221 F.3d 34, 38 (1st Cir. 2000) ("The court, without conversion [into a summary judgment], may consider extrinsic materials and, to the extent it engages in jurisdictional factfinding, is free to test the truthfulness of the plaintiff's allegation"); Shrieve v. United States, 16 F. Supp.2d 853, 855 (N.D. Ohio 1998) ("In ruling on such a motion, the district court may resolve factual issues when necessary to resolve its jurisdiction.")

If jurisdiction is questioned, the party asserting it has the burden of proving a right to litigate in this forum. McCulloch v. Velez, 364 F.3d at 6. "Once challenged, the party invoking... jurisdiction must prove [it] by a preponderance of the evidence." Garcia Perez v. Santaella, 364 F.3d 348, 350 (1st Cir. 2004). *See also*, Mangual v. Rotger-Sabat, 317 F.3d 45, 56 (1st Cir. 2003) and Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (party invoking federal jurisdiction has burden of establishing it).

### DIVERSITY JURISDICTION

Jurisdiction in this case is premised on 28 U.S.C. § 1332 which mandates that the parties be domiciled in different states and that

the claim exceed $75,000.00. "In order to maintain an action in federal court based upon diversity jurisdiction, the plaintiff must be diverse from the defendant in the case." Gorfinkle v. U.S. Airways, Inc., 431 F.3d 19, 22 (1st Cir. 2005). "Diversity jurisdiction exists only when there is *complete* diversity, that is, when no plaintiff is a citizen of the same state as any defendant." Gabriel v. Preble, 396 F.3d 10, 13 (1st Cir. 2005) (italics in original). "The diversity requirement of § 1332 must be complete. In cases involving multiple plaintiffs or defendants, the presence of but one nondiverse party divests the district court of the original jurisdiction over the entire action." Olympic Mills, 477 F.3d at 6. *See also*, Diaz-Rodriguez v. Pep Boys Corp., 410 F.3d 56, 58 (1st Cir. 2005) (complete diversity mandated).

The citizenship of a parent corporation and its subsidiary are considered separately for diversity jurisdiction purposes and, pursuant to § 1332(c)(1), each corporate entity is deemed a citizen of its place of incorporation as well as of the place "where it has its principal place of business."

Diversity jurisdiction is a creature of Congress, not one of constitutional dimension. It seeks to protect litigants from outside the forum from possible bias in favor of state domiciliaries.

History is in part responsible both for the rule's genesis and its rigid application. The historic primary function of the diversity requirement was to provide a neutral forum

CIVIL NO. 05-2173 (RLA)                                           Page 12

for the out-of-state litigant who fears that the state court may be unduly, if unconsciously and inarticulately, solicitous for (sic) the interests of its own citizens. The presence of a nondiverse party eliminates this concern over litigating in the state court.

Olympic Mills, 477 F.3d at 6-7 (internal citations and quotation marks omitted).

Even though diversity jurisdiction is determined at the time the complaint is filed, under particular circumstances, subsequent events may destroy it. Olympic Mills, 477 F.3d at 7.

**RULE 19**

If a party is found to be indispensable to a suit and diversity would be destroyed by its inclusion in the proceedings, the case must be dismissed for lack of subject matter jurisdiction. UNIVERSAL argues that MED PLUS and DATA are indispensable parties to this litigation and that inasmuch as they are both deemed citizens of Puerto Rico under § 1332 - the same as defendants herein - diversity is destroyed should they be joined as plaintiffs.

Parties seeking to evade the complete-diversity rule may attempt to maintain federal jurisdiction by failing to name persons or entities that have an interest in the litigation and otherwise should be named. Federal Rule of Civil Procedure 19 addresses this problem by providing guidance for the joinder of persons needed for just

CIVIL NO. 05-2173 (RLA)                                              **Page 13**

adjudication of all the controversies presented. It establishes guidelines for determining when it is proper to dismiss a case because a person or entity has an interest in the outcome of the litigation that could be impaired in the absence of the person or entity, but joinder of the person or entity will deprive the court of subject matter jurisdiction.

Glancy v. Taubman Centers, Inc., 373 F.3d 656, 664 (1st Cir. 2004).

"Compulsory joinder is an exception to the general practice of giving plaintiff the right to decide who shall be the parties to a lawsuit." 7 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Fed. Practice and Procedure: Civil* 3d § 1602.

In pertinent part, Rule 19 Fed. R. Civ. P. reads:

**(a) Persons to be Joined if Feasible.** A person... whose joinder will not deprive the court of jurisdiction... shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent

obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party.

**(b)  Determination by Court Whenever Joinder not Feasible.** If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

"Assessing whether joinder is proper under rule 19 is a three-step process." Glancy, 373 F.3d at 666. This three-step inquiry consists of: first, ascertaining whether the presence of the absentee is necessary, if so, whether joinder of the absentee is feasible and

CIVIL NO. 05-2173 (RLA)                                          **Page 15**

if not, if the presence of the absentee is indispensable to the proceedings.

In carrying out this probe, the court will initially focus on the nature of the particular interest in controversy and depending on its findings, determine whether it makes the joinder of non-parties desirable or mandatory. That is, the substantial interest of the absentee in the controversy which is presented for resolution must be examined. "[C]ompulsory joinder or dismissal for failure to join an indispensable party should only be ordered where the movant has carried the burden of producing evidence which shows the nature of the interest possessed by the absentee and that the protection of that interest will be impaired by the absence." Generadora de Electricidad del Caribe, Inc. v. Foster Wheeler Corp., 92 F.Supp.2d 8, 14 (D.P.R. 2000).

"[W]hen applying Rule 19(a), a court essentially will decide whether considerations of efficiency and fairness, growing out of the particular circumstances of the case, require that a particular person be joined as a party. When applying Rule 19(b), the court will ask whether it is so important, in terms of efficiency or fairness, to join this person, that, in the person's absence, the suit should not go forward at all." Pujol v. Shearson/Am. Express, Inc., 877 F.2d 132, 134 (1st Cir. 1989).

"From these [Rule 19(b)] factors, the Supreme Court has identified four corresponding interests: (1) the interest of the

outsider whom it would have been desirable to join; (2) the defendant's interest in avoiding multiple litigation, inconsistent relief, or sole responsibility for a liability it shares with another; (3) the interest of the courts and the public in complete, consistent, and efficient settlement of controversies; and (4) the plaintiff's interest in having a forum." Olympic Mills, 477 F.3d at 8-9.

Rule 19(b) inquiry "require[s] fact-intensive analysis, involve the balancing of competing interest, and must be steeped in pragmatic considerations." Olympic Mills, 477 F.3d at 9 (citation and internal marks omitted). *See*, Glancy, 373 F.3d at 665 (Rule 19 "adopt[s] a more pragmatic approach."); Pujol, 877 F.2d at 134 ("we must keep in mind that [Rule 19] aims to achieve a practical objective.")

However, in situations where the absentee's interests are identical to a party already part of the proceedings who can adequately represent those interests, the court may rule against joinder.

"If an absent party's interests are the same as those of a existing party, and the existing party will adequately protect those interests, this bears on whether the absent party's interest will be impaired by its absence from the litigation... But without a perfect identity of interests, a court must be very cautious in concluding that a litigant will serve as a proxy for an absent party." Tell v. Trustees of Dartmouth Coll., 145 F.3d 417, 419 (1st Cir. 1998). *See*

*also*, <u>Glancy</u>, 373 F.3d at 664 (court will ascertain whether named parties or those who can be joined "can adequately represent the interests of" the non-diverse absentee).

Although "[t]here is clearly considerable overlap between Rule 19(a)(2)(1) and Rule 19(b)... [a]dequate representation should be considered as a part of the Rule 19(b) analysis, and not the threshold Rule 19(a) analysis". *Id* at 668.

COOK seeks damages in the complaint for: (1) loss of income in excess of $13 million dollars as a result of termination of the Services Agreement; (2) time invested and expenses related to advice regarding products, systems customer service, service formats, accounting, and business projections, *inter alios*, in the amount of $3 million dollars, and (3) loss of its business operation in Puerto Rico in an amount estimated at $10 million dollars.

UNIVERSAL concedes that COOK has the rights of over at least one of the aforementioned claims. "[I]n general terms the 13 million dollar claim for loss of income that would have been generated under the Services Agreement is owned by Cook."[27] Defendants contend, however, that at a minimum, the claims for time and expenses incurred to comply with the Services Agreement in a sum no less that $3 million dollars and the claim for loss of business operations in Puerto Rico estimated at $10 million dollars belong to MED PLUS

---

[27]   Motion for Reconsideration (docket No. 12) p. 15.

and/or DATA which purportedly renders them indispensable parties to this litigation.

Plaintiff, on the other hand, argues that the claims asserted in the complaint are based on defendants' breach of the Services Agreement and that inasmuch as neither MED PLUS nor DATA are parties to this contract their presence is not essential in this case.[28]

According to UNIVERSAL, the nature of the claim is not important but rather, the true issue for purposes of their motion, is the identity of the entity which holds the rights to the interests claimed by UNIVERSAL. Specifically, defendants noted: "whether the claim is a contractual or extra-contractual nature bares no relationship whatsoever with the **ownership** of the aforementioned claim".[29] "In either case, the legal nature of the related claims should have no effect whatsoever with respect to the determination of **who** owns said claims."[30] "[T]wo (2) of the claims included in the

---

[28]  In addition, COOK posits that any tort claim by non-parties to this suit would be time-barred under the Puerto Rico one-year statute of limitations. *See*, P.R. Laws Ann. tit. 31, § 5298 (1990). UNIVERSAL countered raising the possibility of an unjust enrichment claim which carries a 15 year statute of limitations. *See*, Municipio de Cayey v. Soto Santiago, 131 D.P.R. 304 (1992).

[29]  Opposition to Reconsideration (docket 10) p.10 (emphasis ours).

[30]  Opposition to Reconsideration (docket No. 10) p. 10 (emphasis ours).

CIVIL NO. 05-2173 (RLA)                                    **Page 19**

Complaint **belong to** third parties [Med Plus and Data]" non-parties to these proceedings. (Emphasis ours).[31]

Defendants reason that inasmuch as the rights asserted by COOK belong to MED PLUS and DATA, these two entities would be prejudiced if the merits of their claims were to be adjudicated without their participation in this case. Further, defendants contend that given their absence in these proceedings, UNIVERSAL would face the risk of potential successive suits by MED PLUS and/or DATA based on these same interests.[32]

Thus, the crux of UNIVERSAL's argument is centered on who owns two of the claims asserted in the complaint and as a corollary thereto, COOK's capacity to demand payment thereof and the potential for subsequent litigation arising from those same events.[33]

Based on the allegations in the complaint and the evidence before us, we find that the interests of UNIVERSAL and those of the absentees are virtually identical and see no potential for conflict between their respective positions which would require the presence of MED PLUS and/or DATA in this case to assert their rights independently of COOK. *See, i.e.*, Pujol, 877 F.2d at 135

---

[31]  Motion for Reconsideration (docket 12 p. 14) (emphasis ours).

[32]  Motion for Reconsideration (docket No 12) p. 19.

[33]  In sum, UNIVERSAL argues that "Cook has no standing to prosecute a claim for the loss of Med Plus' business". Motion for Reconsideration (docket No. 12) p. 19. This argument is more akin to the "standing" challenge which is not currently before us under the Rule 19 jurisdictional attack.

(subsidiary's interest in the case "virtually identical to those of [the parent corporation]."

The complaint seeks payment of damages flowing from the alleged breach of the Services Agreement be it directly suffered by COOK or through its affiliates in Puerto Rico which were designated by plaintiff to carry out portions of the contract obligations with UNIVERSAL. Under these circumstances, COOK may very well protect the corresponding interests of these entities and seek adequate relief for their economic losses.

By the same token, given the connection between these corporations and the common origin of the claims, the danger of subsequent litigation is practically non-existent based on res judicata principles. Privity between the parties to trigger protection of the preclusion statute in Puerto Rico will be examined under a pragmatic approach. R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 186 (1st Cir. 2006). In that case the court ruled that there was "a sufficient identity of interest [between two separate but related corporations] to satisfy the privity-of-parties requirement imposed by Puerto Rico law." *Id.* at 197. *See also*, In re Colonial Mortgage Bankers, Corp., 324 F.3d 12, 17 (1st Cir. 2003) ("We have heretofore considered such imbricated corporate relationships [represented by sister corporations] sufficient to establish privity for purposes of claim preclusion.")

Following a pragmatic approach as decreed by the Supreme Court, we can safely conclude that fairness and efficiency are better served by allowing this case to proceed as filed. COOK may adequately represent the interests of the absentees while no prejudice will befall upon defendants by the specter of subsequent litigation. This way, plaintiff's choice of forum will remain undisturbed while at the same time complete disposition of all claims between the parties can be ensured in the present case.

## ALTER EGO

In the alternative, UNIVERSAL moves the court to attribute the citizenship of MED PLUS and DATA to UNIVERSAL under the "alter ego" doctrine which would also result in destroying diversity between the named parties to the litigation.

Traditionally, the alter ego theory has been used to disregard corporate separateness in instances where a corporation is deemed a mere instrumentality or business conduit of another and is used as a subterfuge for wrongful conduct.

> As a general rule, two separate corporations are regarded as distinct legal entities even if the stock of one is owned wholly or partly by the other. Thus, generally, absent fraud or bad faith, a corporation will not be held liable for the acts of its subsidiaries or other affiliated corporations. There is a presumption of separateness that a plaintiff must overcome to establish

liability by showing that a parent is employing a subsidiary to perpetrate a fraud or commit wrongdoing and that this was the proximate cause of the plaintiff's injury. Merely showing control, in the absence of an intent to defraud or escape liability, is insufficient to overcome that presumption... [T]he injured party must show some connection between its injury and the parent's improper manner of doing business - without that connection even when the parent exercises domination and control over the subsidiary, corporate separateness will be recognized.

1 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 43 (footnotes omitted).

The United States Court of Appeals for the Fifth Circuit, however, formulated a different application of the alter ego doctrine by extending it to diversity of jurisdiction purposes. In <u>Freeman v. Northwest Acceptance Corp.</u>, 754 F.2d 553 (5th Cir. 1985), the court developed the "attribution rule" whereby if a parent and subsidiary corporations are deemed alter egos the citizenship of each one of them is attributed to the other. This way, new places of citizenship are added to each corporate entity. *See also*, <u>Panalpina Weltransport GMBH v. Geosource, Inc.</u>, 764 F.2d 352, 354 (5th Cir. 1985) (A corporation "may also gain additional places of citizenship for purposes of diversity jurisdiction... if it is the alter ego of another corporation.")

"Although an alter ego claim is perhaps most commonly used to 'pierce the corporate veil' for the purpose of imposing liability upon a parent for the acts or agreements of its subsidiary, a separate version of alter ego analysis is used to determine the citizenship of related companies for diversity purposes... Two corporations that are deemed to be an alter ego of each other acquire the citizenship of each other." Grunblatt v. UnumProvident Corp., 270 F.Supp.2d 347, 352 (E.D.N.Y. 2003) (footnote and internal quotation marks omitted). *See also*, Polanco v. H.B. Fuller Co., 941 F.Supp. 1512 (D.Minn. 1996) (attributing subsidiary's citizenship to parent in diversity suit).

This interpretation has not gained much acceptance particularly because it does away with the strict requirements for traditional veil piercing.

> [W]hile equitable principles similar to those applicable to piercing the corporate veil in personal liability cases are also employed in jurisdiction cases, the strict test applicable in liability cases requiring some form of fraud or wrongdoing is not required in jurisdictional cases; jurisdiction can be based on a mere finding that the corporation was a 'shell,' without the necessity for a finding of unfairness or wrongful conduct.

Fletcher § 43.70

CIVIL NO. 05-2173 (RLA)                                      **Page 24**

---

In Jet Wine & Spirits, Inc. v. Bacardi & Co., Ltd., 298 F.3d 1, 9 (1st Cir. 2002) the First Circuit Court of Appeals rejected appellant's argument that the defendant and its related companies were "so intertwined as to justify treating the corporations as alter egos". The court went on to state that this argument "would fail even were we to assume that the standard for treating two corporations as one for jurisdictional purposes might be less burdensome to plaintiffs than the standard for piercing the corporate veil in order to impose liability." *See also*, Pyramid Sec. Ltd. v. IB Resolution, Inc., 924 F.2d 1114, 1120 (D.C. Cir. 1991) (court declined to impute a subsidiary's citizenship to a parent corporation even if found to be its alter ego; Bejeck v. Allied Life Fin. Corp., 131 F.Supp.2d 1109, 1112 (S.D. Iowa 2001) (rejecting application of alter ego doctrine to ascertain diversity jurisdiction); Payphone LLC v. Brooks Fiber Commc'n of R.I., 126 F.Supp.2d 175, 179 (R.I. 2001) (allowing a corporation to add places of citizenship runs contrary to diversity jurisdiction statute); Richard A. Simon, Note, *Attributing Too Much; The Fifth Circuit Perverts the Scope of Diversity Jurisdiction*, 19 Cardozo L. Rev. 1857 (1998) ("[T]he alter ego doctrine is only a judicial procedure designed to determine substantive liability, and it is misplaced in the role of determining diversity of citizenship.") (footnotes omitted).

Based on the foregoing, we decline the invitation to follow the limited precedent set by the Fifth Circuit in Freeman and therefore,

**CIVIL NO. 05-2173 (RLA)**                                    **Page 25**

even assuming that the necessary factors are present, will not attribute the citizenship of MED PLUS and/or DATA to plaintiff herein.

### CONCLUSION

Accordingly, the Motion for Reconsideration filed by UNIVERSAL petitioning the court to dismiss the instant complaint for lack of diversity jurisdiction (docket No. **12**) is **DENIED.**

IT IS SO ORDERED.

San Juan, Puerto Rico, this 28th day of March, 2007.


                                      S/Raymond L. Acosta
                                    RAYMOND L. ACOSTA
                                 United States District Judge